FRANK H. BROWN, APPELLEE, V. C. R. EASTERDAY ET AL., APPELLANTS.

FILED JULY 13, 1923. No. 22481.

1. **Nuisance:** OIL STATION. An oil and gasoline filling station erected in a residence district is not a nuisance *per se.*

2. ——: ——. The storage of gasoline in tanks underground, in strict compliance with an ordinance regulating the same, is not a nuisance *per se.*

3. **Explosives:** STORAGE: PERMIT. Ordinance examined, and *held* not to require the taking out of a permit to store gasoline when done in the manner prescribed.

4. **Nuisance:** INJUNCTION. That the operation of a lawful business will depreciate the value of adjoining property furnishes of itself no ground for injunction; the legal remedy being adequate.

5. ——: ——. The right of an individual to enjoin a public nuisance depends upon his being subjected to an injury, not merely in degree, but in kind, different from that suffered by the general public.

6. **Evidence** examined and found not to show any special injury to plaintiff warranting equitable relief.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed and dismissed.*

*Burkett, Wilson, Brown & Wilson, Claude S. Wilson* and *Albert S. Johnston,* for appellants.

*T. S. Allen, C. Petrus Peterson* and *Charles R. Wilke,* contra.

Heard before MORRISSEY, C. J., DEAN, DAY and AL-DRICH, JJ., COLBY and REDICK, District Judges.

REDICK, District Judge.

The action is to enjoin appellants from erecting a fill-

ing station for the sale of oils and gasoline to motorists
in the manner commonly in use. The plaintiff is the
owner of an adjoining lot which he occupies as a private
residence; the defendants are the owner of the corner lot
and his lessees who propose to operate the station. The
grounds upon which the plaintiff bases his right to an
injunction are: (1) That defendants are constructing
said station in violation of the city ordinance regulating
storage tanks for gasoline, a permit therefor having been
denied by the city council as against the public safety;
and (2) that the filling station is a nuisance; that it de-
prives plaintiff of the comfortable enjoyment of his
property; that it will cause a congestion of automobiles
in that vicinity; that the glare of lights will be thrown
directly on plaintiff's house; that the apparatus makes
disagreeable noises; the fire hazard and rates increased,
and the property lessened in value by being rendered un-
inhabitable for residence.

The city of Lincoln filed a petition of intervention,
alleging a city ordinance providing, among other things,
"that no underground gasoline tank shall be installed
without obtaining a permit from the city council for the
installation thereof," and that, notwithstanding a permit
was denied defendants, they were proceeding to install
such tank, and joins in prayer for injunction.

The answers of defendants admit that the filling station
is being erected; that no permit therefor was obtained,
but the same was denied; set forth the nature of the im-
provements contemplated; deny all other allegations of
the petition; and allege that plaintiff has an adequate
remedy at law.

The lower court granted a temporary injunction, which
was made permanent by final decree. and defendants
appeal.

It is conceded that the buildings and other improve-
ments, if constructed as proposed, will in every respect
comply with the building regulations and ordinances of
the city, the objection going only to the fact that de-

fendants are proceeding without a permit to install the tanks. The building ordinance was received in evidence over the objection of irrelevancy by defendants, and considerable space in the briefs on both sides is devoted to a discussion as to its validity; but we do not find it necessary to decide this question, for the reason that the failure to take out the ordinary building permit is not within the allegations of the petitions, which refer only to the "ordinance regulating storage tanks for gasoline." Besides, no building had been started, only a pit for the tanks. Doubtless defendants will apply for and obtain a permit for the buildings before starting upon their erection. Furthermore, the city having refused a permit to install the tanks, defendants were not required to do the useless thing of applying for a permit for the building, the utility of which depended upon the other improvements.

The only questions for discussion then are (1) whether defendants were required to take out a permit to install the gasoline storage tanks; and (2) whether a filling station in the location proposed is a nuisance which an adjoining property owner may enjoin.

The material parts of the ordinance relied upon as requiring a permit to install the tanks are as follows:

"Section 1. It is hereby declared unlawful for any person or corporation to store or keep any coal oil, gasoline, naptha, benzine, or other like products of petroleum, in quantities of more than five gallons in the city of Lincoln in any other manner than provided for in this ordinance. (Provided this ordinance shall not apply to reservoirs on motor vehicles.)"

Section 2 provides with great particularity the material of which the tanks and pipes shall consist, and the manner of their connection and installation, but contains no word on the subject of a permit until the last paragraph, which is as follows:

"Provided it shall be unlawful for any person, firm or corporation to keep any quantity of such products

exceeding one gallon *in any building* within the fire limits of said city *in any other manner than as above described* without first obtaining a written permit from the chief of the fire department so to do. And provided, further, that such oils may be kept and stored in tanks *otherwise than provided in this ordinance* where such tanks are constructed of iron or steel and coated on the outside with tar or other rust resisting material and are detached and clear from buildings, at least 75 feet distant from any other building, and by obtaining permission from the mayor and council, and storing of any such oils on the *west side of Fourth street* in said city." (Italics are ours.)

We are unable to find in this ordinance any requirement that a permit be taken out when the installation is to be made in the manner described in the first part of section 2, which is the case here. The only condition requiring a permit is when it is desired to keep the oil in some other manner. This is practically conceded by plaintiff's counsel, who "confess that the ordinance could have been drawn in a more clear and satisfactory manner," but contend that the defendants and all others in the city have placed a practical construction thereon by uniformly applying for permits, and heretofore accepting a denial thereof as final. The doctrine of practical construction of statutes is well understood, but it only applies to doubtful or ambiguous statutes, and cannot be resorted to for the purpose of altering or adding to the plain meaning of the words used. *Houghton v. Payne,* 194 U. S. 88; *Studebaker v. Perry,* 184 U. S. 258; *Travelers Ins. Co. v. Fricke,* 94 Wis. 258. There is no ambiguity in the ordinance in question; it simply fails to require a permit except in certain cases, and the exception must be construed as excluding all cases not within its terms. There is no language in the ordinance upon which to found the practical construction suggested. It therefore becomes unnecessary to discuss the power of the city to

deny the permit for reasons of public safety, or the validity of the ordinance.

The other question presents greater difficulty. The decree of the lower court contains no finding on the subject of nuisance, but is based exclusively upon a finding that defendants were "about to erect and install a gasoline filling station and storage tanks * * * without a permit from the city and in violation of the ordinances." So far as the city is concerned, the decree might be justified regardless of the question of nuisance, if a permit were requisite, but the suggestion of nuisance arising from the supposed unlawful character of the act, which we find is not well-founded, is one which a private party is not entitled to make unless he suffers special injury. *Hill v. Pierson,* 45 Neb. 503; *Letherman v. Hauser,* 77 Neb. 731. The question, however, is presented by the pleadings and evidence and should be disposed of for future guidance in similar cases.

Plaintiff's proposition is: "The erection and operation of the filling station and storage tanks is a private nuisance." He cites *Whittemore v. Baxter Laundry Co.,* 181 Mich. 564. In that case defendant proposed to bury two 10,000-gallon tanks for the storage of gasoline at the extreme edge of its property, and at a point farthest away from its own buildings and within 10 feet of plaintiff's residence, and it was shown that they could have been placed at a point removed from proximity to any residence, and no good reason was suggested for not so placing them. The court held that, *under the circumstances,* it constituted a private nuisance. What the holding would have been if defendant had made a *reasonable* use of his own property may be inferred from the concession: "We may grant that the storage of gasoline on premises adjacent to or adjoining the premises of another is not a private nuisance *per se.*" We do not think it is seriously contended in the instant case that gasoline stored in the manner prescribed by the ordinance at the place in question is a menace to the safety of

plaintiff and his property; he presented no evidence on the point, while defendants showed by insurance men that the hazard of fire was not thereby increased.

*McGregor v. Camden,* 47 W. Va. 193, is also cited, which involved the drilling and operating of an oil well, and presents no proper analogy.

Also *O'Hara v. Nelson,* 71 N. J. Eq. 161. This case was decided in 1906, in the pioneer days of automobiles, and restrained the defendant from filling tanks of automobiles inside the building *and from storing automobiles with gasoline in their tanks inside the building.* The development of the automobile as a real necessity of modern life has rendered this decision archaic. To require a car to be drained of gasoline, and run in and out of a garage by hand power, would be an unreasonable restriction on business as now conducted. The defendant had a permit to store 55 gallons *outside* the building, which was frame, while 200 gallons would be in the tanks of the machines stored; great stress was laid upon the fact that the storage was in the building.

We are not prepared to hold as a matter of law that a filling station or the storage of gasoline in the manner proposed is a nuisance.

The plaintiff finally contends that he will be deprived of the comfortable enjoyment of his property by reason of a congestion of automobiles, the glare of lights, and the noise of the apparatus used in operating the station, and that these will constitute a private nuisance. Regarding the increase of traffic, the same reasoning would constitute a popular church a private nuisance, as it is a well known fact that, not only on Sundays, but on other days and nights, when the activities of churches are in progress, automobiles are parked for blocks in all directions and to a certain extent interfere with the quiet enjoyment and privacy of homes in the vicinity, and yet these are but the trivial inconveniences necessarily resulting from changes and improvements growing out of advancing civilization. The same may be said as to the

glare of the lights.   These inconveniences are shared by the general public, and the only difference as regards the plaintiff is in the matter of degree, not of kind, and there-fore does not constitute a special injury entitling him to an injunction. *Ayers v. Citizens R. Co.*, 83 Neb. 26. As to the disagreeable noises, the evidence does not convince us they are of such a character as to seriously interfere with the plaintiff's comfort and enjoyment of his home. The contention that the plaintiff's property will be re-duced in value by the erection of the gasoline station, if true in point of fact, is not of itself ground for equitable interference.

The contention is made that the location in question is in a purely residence district, which should not be invaded for the purpose contemplated.   A sufficient answer would seem to be that, in the absence of legislation dividing the city into zones and having a general application to all property within the respective sections, it is not within the power of the courts to interfere with the lawful use of property by the owner.   It was held, however, in *Hanes v. Carolina Cadillac Co.*, 176 N. Car. 350 (citing cases), that automobiles being of general use, and public gasoline supply stations being essential, their erection in a residence district is not a nuisance *per se*.   Whether or not by reason of the manner of operation of the filling station in question it may become a nuisance calling for equitable cognizance rests in the future, and we express no opinion in that matter.   What we do hold is that the evidence is insufficient to sustain a finding that the pro-posed improvement will necessarily amount to a nuisance. It follows that the judgment of the lower court must be reversed and the case dismissed.

REVERSED AND DISMISSED.