MARTHA E. HILLEREGE, APPELLANT, v. CITY OF SCOTTSBLUFF, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

83 N. W. 2d 76

Filed May 10, 1957. No. 34074.

*Mothersead, Wright & Simmons* and *Robert M. Harris,* for appellant.

*Clarence S. Beck,* Attorney General, *Harold S. Salter,* and *Loren G. Olsson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant by this action seeks an injunction preventing appellees from erecting any structures which will interfere with the use of described parking areas of appellant unless and until appellees establish the right to do so by due process of law, and preventing appellees from giving effect to a designated contract made by them concerning the regulation of parking in the street adjacent to the front of described properties owned by appellant.

The appellant states three causes of action which are in substance the following:

The first relates she is the owner of specifically described real estate in Scottsbluff on which prior to the year 1955 she constructed extensive and valuable improvements, a portion of which is a paved parking area where customers using the improvements may park their motor vehicles thereon and off of the right-of-way of the public streets. The property is in the condition it has been since before the year 1955. The parking area is of value to the appellant and the described premises, and the loss of the use of the parking

area would greatly depreciate the value of the entire premises. Appellees will, unless enjoined by the court, erect structures on the right-of-way of a public street adjoining the parking area, designed, intended, and adequate to make it impractical and impossible to use the parking area. The structures will deprive the appellant of the use of her property without due process of law and will cause her irreparable damage. She has no adequate remedy at law.

The second states appellant is the owner of described real estate in Scottsbluff on which are valuable improvements and in front of which there is and has been for many years an area provided and used· for parking motor vehicles. The parking area is of value to the premises and the other improvements thereon. Appellees intend to and will, unless enjoined by the court, construct structures upon the right-of-way of a public street in front of and adjacent to the parking area, designed, intended, and adequate to make it impractical and impossible to use the parking area. The structures will deprive appellant of the use of her property without due process of law and will cause her irreparable damage. She has no adequate remedy at law.

The third claims appellant is the owner of the premises described in the preceding causes of action. The freedom to park motor vehicles on the street adjacent to the premises is of great value to the appellant. Appellees made and executed an instrument in writing on or about August 11, 1955, by which they mutually agreed that parking in the street in front of the premises of appellant should be adjacent to and parallel with the curb and no nearer than 14 feet of the center line of the street. The city bound itself to cooperate fully with the state in the matter of on-street parking at said places; and if the state should require definite regulations other than those in effect, the city agreed to cooperate fully with the state and to pass an ordinance containing and making effective such measures as may be required

by the state. Appellees consider the instrument to be a valid and binding contract and they intend to carry out its provisions. The instrument purported to be authorized by a resolution of the council of the city. It does not appear in the minutes of the proceedings of the council and the instrument has not been published as required by law. The instrument is an attempted illegal delegation of legislative action by the city and is an attempt to create an ordinance without compliance with statutory mandates precedent to the passage and effectiveness of an ordinance. It is unconstitutional and void and its enforcement would deprive appellant of her property without due process of law.

The State of Nebraska, Department of Roads and Irrigation, hereafter referred to as State, denied all claims made by appellant and alleged the following: Appellees made an agreement July 13, 1955, for the widening and improvement of the portion of Twenty-seventh Street of the city of Scottsbluff, referred to hereafter as city, beginning at its intersection with Avenue A and extending westerly to the intersection of Twenty-seventh Street with State Highway No. 87, a copy of which agreement is exhibited as a part of the answer. The city and the State executed the instrument on August 11, 1955, referred to by appellant in her third cause of action, and it is a binding contract between the parties. The city regulates traffic and parking upon its streets and sidewalks. It determines the width of the paved surface, the location and dimension of curbs, and the location and width of sidewalks within the city on its street rights-of-way. Appellant has no vested interest in or property right to the flow of traffic of Twenty-seventh Street.

The city denied all allegations of appellant except those as to the class and status of the city, the ownership of the real estate in the city as alleged by appellant, and the execution of the instrument referred to by appellant as having been made and entered into by

appellees. The city alleged it regulates traffic and parking upon the streets and sidewalks and that it determines the width of the paved surface, the location and dimension of curbs, and the location and width of sidewalks within the city on its street rights-of-way.

The reply of appellant was a denial and a claim that the action contemplated by appellees discriminates against appellant in attempting to deny her use of the streets which is permitted to other persons similarly situated.

The parties agree that Scottsbluff, Nebraska, is a city of the first class with a population of less than 40,000 inhabitants; that it is not a home rule city; and that appellant is the owner of Lots 13 and 14, Block 2, Beatty Tracts, an addition to the city of Scottsbluff, designated herein as Tract 1, and Tract No. 24, Goos Tracts, an addition to the city of Scottsbluff, spoken of herein as Tract 2.

The district court found that: The real estate of appellant abuts Twenty-seventh Street, is improved, and is used for business purposes. Prior to 1955 appellant paved the area of the real estate described in the first cause of action northward from the north line of the sidewalk to the south boundary of Twenty-seventh Street, and customers transacting business on the premises parked motor vehicles partly on that pavement and partly on Twenty-seventh Street but not upon the paved portion of the street. A similar use was made of the real estate involved in the second cause of action except no part of it has been paved. There are no barrier curbs in front of the real estate of appellant. The city adopted an ordinance August 4, 1953, creating an improvement district for widening and improving a portion of Twenty-seventh Street beginning at Avenue A and continuing westward past the real estate of appellant. The ordinance was duly published. Plans and specifications for the project were approved by resolution of the city council and they provide for con-

struction of barrier curbs in front of the premises of appellant. These change the method by which persons operating vehicles have access from Twenty-seventh Street to each of the properties of appellant. The change in access will prevent parking vehicles as was done before such construction and it will lessen and may eliminate such parking. The plan for barrier curbs is uniform within the improvement district except at the entrances to filling stations. Parking space for customers at other business properties is provided in the manner appellant has done on the route of U. S. Highway No. 26 within the city and at other places which do not abut upon the highway. The city has not commenced condemnation proceedings because of the street improvement district or anything that is contemplated to be done within it. No part of the street improvement is upon private property and the proposed construction will not interfere with the use by the public of the street for highway purposes. There is proof that completion of the construction as provided by the plans and specifications will substantially diminish the value of the property and the value of the use of the property of appellant. The State is assisting the city in the preparation of plans and specifications and in the supervision of construction. It does not make or enforce restrictions upon the use of property abutting on the street.

The trial court made no finding as to the four issues indicated because of its conclusion that they were each immaterial in this case and that the record exhibited no facts that would justify findings thereon, to wit:

1. The validity of ordinances which may be subsequently enacted by the city for the regulation of parking upon Twenty-seventh Street.

2. The right of the city to regulate parking and access of vehicles to privately owned property without compensation to the owners of abutting property.

3. The right of the Department of Roads and Irrigation, State of Nebraska, to demand or request the

adoption of ordinances by the city pursuant to the terms of the contract previously executed.

4. The right of the plaintiff to institute action under section 76-705, R. S. Supp., 1955, for the ascertainment and recovery of consequential damages claimed by her.

The judgment was that "both causes of action" be dismissed and the temporary injunction granted in the case be dissolved, all without prejudice to an action at law by appellant for the recovery of damages which may result from the construction proposed by the city or from the adoption of later regulations restricting parking and access of vehicles to the properties owned by appellant. The motion for a new trial was denied; hence this appeal.

This case is concerned with the part of Twenty-seventh Street of the city west of Broadway Avenue which extends north and south. The direction of Twenty-seventh Street, which is also spoken of in the record as West Twenty-seventh Street, is east and west. It is a business street and it continues from Broadway Avenue to Avenue I a distance of about 1 mile. It lies in the route of U. S. Highway No. 26 and Nebraska State Highway No. 29 as they are located through the city. These will be spoken of as Highway No. 26 and Highway No. 29, respectively. The right-of-way of Twenty-seventh Street was, at the commencement of this action, 66 feet in width and the paved surface of it was 20 feet wide. The center line of the paved portion of the street was the center line of its right-of-way. There were no curbs on the street. The surface of the right-of-way on either side of the pavement was dirt or gravel.

Appellant has owned and does own Tract 1 known as Terry's Town and Country. It consists of the real estate and improvements thereon. The building is 100 feet from east to west and about 118 feet from north to south. In it is conducted a drug store, a super-foods market, and other businesses. The front of the build-

ing is toward the north. The real estate abuts on the south side of Twenty-seventh Street and on the east side of Avenue D. The distance from the north line of the building to the north property line, which is the south line of Twenty-seventh Street, is between 18 and 19 feet and the distance from the east right-of-way line of Avenue D to the west property line is about 14 feet. It is 47 feet from the east line of the building to the east property line. This area is devoted to the parking of customer vehicles and it is designated customer parking lot. There is a private concrete sidewalk about 7 feet wide along the entire front or north side of the building. There is a private paved parking area about 11 feet wide extending from the north edge of the sidewalk to the south right-of-way line of Twenty-seventh Street which was provided and completed when the building was constructed about the year 1947. The patrons of the businesses conducted in the building have been permitted to and they have since the building was constructed parked their automobiles to the north of and at right angles to the building with the front of the cars to the south. They have been privileged to have the front wheels of their cars against the north edge of the sidewalk and to let the front of the vehicles overhang the sidewalk. It has been possible to park at one time in the manner described as many as ten or eleven automobiles north of the building. The length of motor vehicles is from 14½ feet to about 18 feet. The rear part of such vehicles parked north of the street in the manner described was far enough north so that it extended into and occupied to some extent the right-of-way of Twenty-seventh Street. There was evidence of the owner of a 1949 Packard sedan, about 17 feet in length, that he had parked it with his front wheels against the north edge of the sidewalk in front of the building and within about 12 inches of another parked car on the left of the Packard car, and that he backed the Packard to a point so that he could proceed to his left or to the east

without any part of his car overlapping or extending to the paving on Twenty-seventh Street.

The south part of Tract 2 owned by appellant abuts the north side of Twenty-seventh Street and the west part of the property abuts the east side of Avenue F. In the building on the premises is a business described as Bendix Laundrette. The front of the building is toward the south and Twenty-seventh Street. Its front line is about 12 feet north of the north right-of-way line of Twenty-seventh Street and the west line of the building is about 6 feet east of the east right-of-way line of Avenue F. There is a private sidewalk about 4 feet wide that is adjacent to and along the front of the building. The patrons of the Laundrette have parked their vehicles in front of the building at right angles to the building. The vehicles parked in this manner extend south into the right-of-way of Twenty-seventh Street but not to or on the paved portion of the street.

In August 1953 the city, by proceedings duly had, decided to improve Twenty-seventh Street from the east line of Avenue A to a point 200 feet west of the west line of Avenue I by laterally extending the concrete roadbed 14 feet on either side of the existing pavement thereon so that the paved highway on the street could consist of four lanes of 12 feet each. The work contemplated by the improvement of the street was described as grading, curbing, guttering, paving, and drainage as provided by plans, specifications, and estimates to be thereafter adopted. The ordinance creating the improvement district was published and notice of the erection of the district was given as required by law. There is no issue as to the regularity of the proceedings creating the district or as to the validity and effectiveness of the city legislation establishing it. The city, in the manner permitted by law, made a contract with the State of such a nature that it enabled the city to obtain federal aid funds on account of the project. The city, by resolution, approved plans for the project July

18, 1955. The plans provided for the work above related, including the installation of median curbs, gutters, and barrier curbs in front of all properties within the project. The regular median curb is at the outer edge of the surfaced portion of the street. It is primarily for drainage purposes and for delineating driveway openings. The median curb is about 9 feet inside of the right-of-way line. The barrier curbs restrict the use of public property, the street right-of-way, for parking purposes or any other use which abutting properties might wish to make of that public property. Barrier curbs are constructed on the right-of-way adjacent to the right-of-way line and join at intersections and driveways with the median curbs. The plans permit ingress and egress to and from all properties abutting on the street. The curb cut for driveway purposes in front of Tract 1 of appellant is 23 feet and, likewise, the curb cut for driveway purposes serving Tract 2 owned by appellant is 33 feet. There is evidence that an object of barrier curbs is to prevent the area between the median curbs and the street right-of-way line being utilized for parking or other purposes that would cause a hazard to the traveling public by obscuring the vision of vehicles entering and leaving abutting properties and of traffic moving on the street. The available means to accomplish these purposes are barrier curbs, guard posts, or guard rails. There is a heavy volume of traffic on Twenty-seventh Street. An estimate of 200 motor vehicles enter and leave the parking stalls in front of Terry's Town and Country in the period of an average 10-hour day when the supermarket is open for business.

The testimony of appellant was not disputed that the value of Tract 1 was about $100,000, that the construction of the barrier curbs in front of and near the building thereon would diminish the value of the property to $40,000 or $50,000, and that the rental value and the rent received from the property is $600 per month. Tract

1 has been rented to the same tenant since it was built and the lease has not expired. The tenant is a partnership and the members thereof corroborated the testimony of the owner of the premises that the fair and reasonable rental thereof is $600 per month and that the rental value thereof, if the barrier curbs are constructed as planned, would be reduced to $300 per month or less. Appellant testified, and is not contradicted in the record, that the value of Tract 2 was $25,000 to $30,000; that it has been and is rented for $115 per month on a term lease that has not expired; and that if the barrier curbs are constructed affecting this property as proposed, the value thereof would be reduced to $12,000 or $15,000.

The essence of the complaint made by appellant in each of the first and second causes of action is that appellees will, unless prevented by mandate of the court, construct on the right-of-way of Twenty-seventh Street in front of the parking area of each of the properties of appellant, structures, median and barrier curbs, designed, intended, and adequate to make it impractical, and probably impossible, to use the parking area of each of the properties of appellant as they have been used and would continue to be used if the curbs were not erected as proposed by the city. If the proposed curbs were eliminated from the street improvement as it affects the property of appellant, the substance of this lawsuit would be dissipated. Appellant believes and argues that the city cannot legally accomplish its purpose in this respect without first ascertaining by proper proceedings and paying, or providing in a legal way for the payment, to appellant any damages accruing to her as an abutting owner occasioned by the contemplated street improvement as planned. Inherently the position of appellant contains a claim that the contemplated improvement of the street, even though attempted by the exercise of the police power, may not be accomplished without the payment of damages to appellant because the mere construction of the barrier curbs in front of the real estate

of appellant will reduce the reasonable value of it about 50 percent and that she contends is confiscatory. Appellant appeals for support of her position to the constitutional assurance that the property of no person shall be taken or damaged for public use without compensation therefor. Art. I, § 21, Constitution of Nebraska. She characterizes this as the basic law involved in this case.

The capability of a city in the exercise of the police power delegated to it is not absolute and unlimited. Municipal action may not be so arbitrary, unreasonable, confiscatory, or discriminatory as to deprive an owner of property without due process of law.

It is said in City of Scottsbluff v. Winters Creek Canal Co., 155 Neb. 723, 53 N. W. 2d 543: "In the exercise of police power delegated to a city it is generally for the municipal authorities to determine what ordinances are required for the health, safety, and welfare of the people, but their action is not final and is subject to scrutiny of courts. * * * The test in such cases is whether the ordinance in question is a bona fide exercise of police power or an arbitrary and unreasonable interference with the rights of individuals under the guise of police regulation. * * * A municipal ordinance enacted in the exercise of police power is not necessarily invalid because it infringes on private rights or property, but such infringement should not be arbitrary, unreasonable, or confiscatory."

In Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 332, 28 A. L. R. 1321, it is declared: "As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone." See, also, Chicago, B. & Q. R. R. Co. v. State of Illinois ex rel. Drainage Commissioners, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596.

It is true, as appellant asserts, that it has been some-

times stated that the fee of the street is in the municipality. This form of statement was sufficient for the facts the court was then considering and it was not necessary for it to determine or precisely declare in those cases the exact nature of the ownership a city has of a street or the condition and qualification of its title. It is generally recognized that under legislation such as prevails in this state the title of a street vested in a municipality is not a fee simple title absolute but a qualified base or determinable fee and that the title which the municipality has is held in trust for the purposes for which the street is dedicated. This court stated in Burlington & M. R. R. Co. v. Reinhackle, 15 Neb. 279, 18 N. W. 69, 48 Am. R. 342: "The fee of streets is in the public; but it is held in trust for public use. The municipal corporation cannot sell or permanently obstruct the streets without compensation to the owners of property specially injured thereby. The trust like any other must be exercised in good faith. It was created to give permanency to streets and apply them wholly to the use of the public." See, also, Jaynes v. Omaha Street Ry. Co., 53 Neb. 631, 74 N. W. 67, 39 L. R. A. 751; Belgum v. City of Kimball, 163 Neb. 774, 81 N. W. 2d 205; Annotation, 11 A. L. R. 2d 549.

A city cannot prohibit the use of a street for travel thereon or for any reasonable incident of travel. It may reasonably regulate but it cannot prohibit. The right of an owner of property abutting on a street to ingress and egress to and from his premises by way of such street is a property right in the nature of an easement in the street which the owner of abutting property has, not in common with the public generally, and of which he cannot be deprived without due process of law and compensation for his loss.

It is stated in Jaynes v. Omaha Street Ry. Co., *supra*: "As an abutting property owner she (the plaintiff) has the right to free ingress and egress to and from this property and to and from the street * * *."

Michelsen v. Dwyer, 158 Neb. 427, 63 N. W. 2d 513, states: "The rights which an owner of abutting property possesses in a street are different in kind from those possessed by one whose interest is only that of a right-of-way along the street."

In Hathaway v. City of Sioux City, 244 Iowa 508, 57 N. W. 2d 228, it is said: "Whatever might be our conclusion if we had a simple question between private owners of abutting premises * * * there is involved here an additional and, we think, a controlling element, viz., plaintiffs' right of ingress to and egress from their premises by way of First Street. This is a property right, an easement in the street which the owner of abutting property has, not common to the public generally and which cannot be taken away without just compensation. * * * This property right of access and egress is appurtenant to plaintiffs' premises."

It is stated in Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N. E. 325, 47 A. L. R. 897: "Access to a public way is one of the incidents of ownership of land bounding thereon, and this right is appurtenant to the land and exists when the fee of the way is in the municipality as well as when it is in private ownership."

Genazzi v. County of Marin, 88 Cal. App. 545, 263 P. 825, asserts: "* * * an abutting land owner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right of easement which cannot be damaged or taken from him without due compensation." See, also, Liddick v. City of Council Bluffs, 232 Iowa 197, 5 N. W. 2d 361; Breinig v. Allegheny County, 332 Pa. 474, 2 A. 2d 842; 25 Am. Jur., Highways, § 154, p. 448; 64 C. J. S., Municipal Corporations, § 1701, p. 96; Annotations, 22 A. L. R. 942, 47 A. L. R. 902, 66 A. L. R. 1052.

The measure of the right of the owner of property abutting on a street to access to and from it by way of the street is reasonable ingress and egress under all the

circumstances. The right of access does not extend to all points in the boundary between the abutting property and the street. In Denman v. City of Tacoma, 148 Wash. 314, 268 P. 1043, it is said: "We recognize the law to be that a land owner may have a special right of ingress and egress to and from his land of a special nature, differing from and superior to the right of the public, even over portions of a highway not directly abutting upon his land. We concede that appellant has such a right under the circumstance here presented. The extent of that right is the real question here presented. Its measure, we think, is simply reasonable ingress and egress under all the circumstances. Freeman v. Centralia, 67 Wash. 142, 120 Pac. 886, Ann. Cas. 1913D 786."

This appears in Genazzi v. County of Marin, *supra*: "Generally speaking, an abutting land owner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right of easement which cannot be damaged or taken from him without due compensation. But an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, although entire access cannot be cut off. If he has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint."

Bacich v. Board of Control, 23 Cal. 2d 343, 144 P. 2d 818, states: "* * * an owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. * * * The extent of the easement of access may be said to be that which is reasonably required giving consideration to all the purposes to which the property is adapted."
See, also, 64 C. J. S., Municipal Corporations, § 1703, p. 99.

The charter of the city authorized it to make the street improvement involved in this case. The relevant provisions of section 16-609, R. R. S. 1943, are: "The council shall have power to * * * control, * * * extend, widen, * * * grade, curb, gutter * * * and pave or otherwise to improve * * * in any manner it may deem proper, any street, avenue or alley * * * or part of either * * *." This grant by the state to the city was a delegation of police power to be exercised in harmony with a sound discretion in a reasonable and not in an arbitrary or discriminatory manner. State ex rel. Andruss v. Mayor and Council of City of North Platte, 120 Neb. 413, 233 N. W. 4. It is generally for the municipal authorities, in the exercise of the police power delegated to the city in reference to its streets, to determine what action is required for the safety, convenience, and welfare of the people. Its action in this respect is not final but is subject to judicial review. The test in such a case is whether or not the action proposed is a good faith, reasonable exercise of the police power or an arbitrary and unreasonable interference with the rights of the person or persons affected thereby. The action taken by the city is presumed to be valid and the burden is on the litigant contesting it as invalid to establish by clear and unequivocal proof that it is so unreasonable, arbitrary, confiscatory, or discriminatory as to amount to depriving the litigant of property without due process of law. City of Scottsbluff v. Winters Creek Canal Co., supra; State ex rel. Andruss v. Mayor and Council of City of North Platte, supra; Council Bluffs Transit Co. v. City of Omaha, 154 Neb. 717, 49 N. W. 2d 453; Graham v. Graybar Electric Co., 158 Neb. 527, 63 N. W. 2d 774.

Scottsbluff is a growing city. The street in question is one of its much-traveled principal streets. It is a business street. It is the route of two improved, favored highways. The volume of traffic upon it is very heavy. The paved part of the street is, or will be when the improvements are accomplished, 48 feet wide. The distance

from the center of the paved portion to the median curb is 24 feet. There are thereon but two lanes of travel of 12 feet each. During an average business day of 10 hours when Terry's Town and County is operating, about 200 automobiles are parked in the parking spaces in front of the building. This is an average of 20 each hour and 1 each 3 minutes coming in and going out. The automobiles are generally about 15 feet to 18 feet long. The facts recited herein make it certain that the rear of an automobile parked in front of the building at right angles thereto is in the right-of-way of the street and quite close to the south edge of the pavement and, according to the evidence, usually about 12 feet from the center of the right-of-way when backed out of the parking sufficiently to leave by turning and proceeding to the right or left past other parked cars.

The rear end of an automobile parked at right angles in front of the building on Tract 2 is close to the median curb. The distance from the south line of the sidewalk in front of the building to the median curb or the north edge of the street pavement is about 17 feet. The operation of parking in that location in that position and the operation of leaving the parking not only necessitates using and occupying a part of the street but going upon and using the paved portion of it. There is even a hazard that vehicles may be backed out of the parking to the south across the center line of the pavement.

The testimony of one operator of an automobile 17 feet in length that was parked with its front wheels against the sidewalk in front of the building on Tract 1 about 12 or 14 inches from a parked car to the left and that the operator backed it out of the parking and drove to the right or east without driving onto the street pavement is not convincing of the absence of hazard from the parking of automobiles north of the building with free and unlimited ingress and egress to and from the street. There was no car parked in the parking space immediately to the right of the car used in this test of the

situation. This experience does not demonstrate much. The city was not confronted with an ideal situation when is was considering and exercising its discretion in the planning and improvement of the street for the safety and convenience of the public. The problem was the hazard in the ordinary operation of automobiles parked in the spaces under the circumstances shown, and not what is possible for a careful driver to do on a single occasion or what could happen in only one of many different circumstances or what would take place if a motorist would never fail to exercise sound judgment and due care.

Appellant insists that there is no traffic hazard involved in the existing situation. She says the State or city has not determined that a hazard existed in the area because of the parking and that the same conditions have existed in front of her property since 1947. The inference is that because there had not been an accident, it is unreasonable for the city to take action to improve a situation for the benefit of the public. It is not essential that inevitable accident will result from a situation before it becomes reasonable for a city to take action to remove the danger of accident and injury from what it evaluates as a hazardous condition.

It was sufficient justification for the action of the city that a condition existed which was of such unusual hazard that in view of the frailty of mankind and the tendency to be careless, accidents would be so likely to happen that the public should not be exposed to them. The city has not invaded and does not propose to invade the physical property of the appellant. The improvement it desires to make is wholly within the right-of-way of the street. It does not contemplate placing any restriction on the property or the use of property of appellant. It has made provision for reasonable ingress and egress by way of the street to and from her property. Appellant has no legal right to appropriate a part of the street to the purposes of her private business or to

be used as a part of or to improve and make more useful a facility used in the conduct of her business. The record makes it clear that the appellant seeks the aid of equity to assure her against the loss of an operation which cannot be carried on without the use of a part of a street which the city holds in trust for the use of the public. The plan proposed by the city is justified for the safety and convenience of the public. It is reasonable and it is a proper exercise of the police power by the city.

The manner of the exercise of the authority of the city to improve the street is not contested. There is an objection based on the fact that the ordinance recites that the improvement of the street is to be done according to plans and specifications thereafter approved; that the plans and specifications were approved by the council of the city by resolution which was only published in the minutes of the meeting of the council; and that the plans provide for median and barrier curbs intended as and constituting a regulation of traffic and this could have only been legally accomplished by the passage and publication of an ordinance as provided by law. This argument is untenable. The charter provision empowered the city to construct curbs in the street. When the city properly exercised power to make the improvement, it could provide for and construct any kind of reasonable curbs the exercise of a sound discretion dictated without further city legislation.

Appellant contends that the plans for the improvement of the street are invalid because they deny use of a street to her which is permitted to others and they are, therefore, discriminatory. The doctrine relied upon in this respect is operative only if a regulation is applied differently to different persons under the same or similar circumstances. The engineer for the Department of Roads and Irrigation testified that curbs are provided generally in front of all properties, without

exception, located on Twenty-seventh Street and that this is reflected in the plans of the project which are in evidence. This means that all abutting property owners in this improvement district are in this regard treated alike. There is no legal discrimination and the complaint is not valid. In Gardner v. City of Brunswick, 197 Ga. 167, 28 S. E. 2d 135, the court said: "The plaintiff in error contends that the ordinance is discriminatory. An examination of the ordinance discloses that it applies alike to all persons and property owners located within the area described in the ordinance. 'It is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied.' (Citing many cases.) * * * As pointed out above, the ordinance in question is applicable alike to all persons and property owners affected within the area described in the ordinance, and under the authorities cited, it cannot be held to be discriminatory." See, also, Hoyne v. Wurstner (Ohio App.), 63 N. E. 2d 229. In addition to the foregoing, the evidence offered in support of this contention is not sufficient to show a legal discrimination.

Appellant assails the validity of a writing supplemental to the original principal contract made by appellees concerning the street improvement to the effect that all parking within the limits of the project shall be adjacent to and parallel with the curb and in no event nearer than 14 feet to the center line of the project; and that if the State should determine later that highway traffic would require definite regulations other than those in effect when the writing was made, the city agreed to cooperate with the State in such matters and to pass an ordinance to incorporate such measures as may be required. The record shows that appellees believe and recognize the writing as a valid and binding obligation and that they expect to observe it. However, it is not established that any action has been proposed or attempted to be taken because of it. The fears of

appellant are anticipatory. The attempt to contest the action of the city council because of the writing is premature. Lee v. City of McCook, 82 Neb. 26, 116 N. W. 955; Chicago, R. I. & P. Ry. Co. v. City of Lincoln, 85 Neb. 733, 124 N. W. 142; Leeman v. Vocelka, 149 Neb. 702, 32 N. W. 2d 274; Noble v. City of Lincoln, 153 Neb. 79, 43 N. W. 2d 578; Annotation, 140 A. L. R. 439.

The city had, when the writing was made, an ordinance requiring parallel parking at the curb on all streets except where otherwise provided by resolution of the city council and the record does not exhibit any resolution of the city council concerning parking vehicles on Twenty-seventh Street in any manner contrary to the requirement of the ordinance. There is no evidence to sustain the third cause of action and the court should have dismissed it because of absence of proof concerning it.

It is recognized that this is a case in equity triable de novo in this court. It has been considered and decided in that manner. Appellant has failed to establish any of the causes of action pleaded. The case should be dismissed. The judgment of the trial court should be reversed because it disposes only of two of the three causes of action and as to these the decision of the court is without prejudice to another action.

The judgment should be and it is reversed, the cause is remanded to the district court for Scotts Bluff County with directions to render a judgment dismissing the case, and the costs should be taxed to appellant.

REVERSED AND REMANDED WITH DIRECTIONS.